RENDERED: APRIL 10, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1184-MR

TIMOTHY ESTEPP APPELLANT

APPEAL FROM CAMPBELL CIRCUIT COURT
v.    HONORABLE JULIE REINHARDT WARD, JUDGE
ACTION NO. 22-CR-00322

COMMONWEALTH OF KENTUCKY APPELLEE

OPINION
VACATING & REMANDING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; COMBS AND ECKERLE, JUDGES.

ECKERLE, JUDGE: Appellant, Timothy Estepp ("Estepp"), seeks review of the

Campbell Circuit Court's Order dated August 29, 2024, voiding his felony

diversion and sentencing him to three years, probated for three years in accordance

with his guilty plea to Theft by Unlawful Taking ("TBUT") under $10,000

(Controlled Substance). Estepp argues that the Trial Court abused its discretion by

failing to make the requisite findings according to Kentucky Revised Statute

("KRS") 439.3106. He also contends that the Trial Court committed palpable error by increasing the sum of his monthly restitution payments. After careful consideration and thorough review, we vacate the Trial Court's order because it stated insufficient findings and remand for further proceedings. Because we are not finding that the Trial Court's ultimate conclusion that diversion should be removed is an abuse of discretion or otherwise incorrect, we are not reversing the decision. However, upon remand we are requiring the Trial Court either to delineate its reasoning and required conclusions to support its decision or to reach a different decision.

## I.     Factual and Procedural History

On August 18, 2022, the Campbell County Grand Jury indicted Estepp for TBUT under $10,000 (Controlled Substance). Although not specified in the indictment, the Trial Court questioned Estepp at a hearing on March 14, 2023, and he admitted to stealing 120 oxycodone pills and other scheduled drugs from Walgreens "for a friend." Video Record Supplemental ("VR Supp"),[1] 2023-03-13 at 1:35-2:45. It is not clear whether this large, lethal amount of narcotics

---

[1] The Video Record consists of two CD-ROM discs, one marked "2024-CA-1184, Tim Estepp, 22 CR 322," and a second marked "Supplemental 24-CA-1184, 22 CR 322," which we will reference "VR" and "VR Supp," respectively. The "VR Supp." disc contains hearings conducted prior to and at Estepp's plea and preliminary dispositional hearing, and the "VR" disc contains hearings occurring after his plea and felony diversion agreement. As noted by the parties, the VR does not contain the usual date and time stamps. Times referenced are from the runtime of the video clip.

entered the illicit drug trade but it is certain to have had less than a benign effect. The Commonwealth confirmed that the drugs were never recovered; but it reported that Estepp had assisted in the investigation and determination of the restitution owed to Walgreens. *Id.*, at 3:47-4:10. Estepp now contests restitution. And it appears that he did not provide the names of the individuals who received the contraband directly from him. Apparently, no one else was prosecuted. The Trial Court expressed some reluctance at the Commonwealth's generous offer of diversion under the circumstances. However, it ultimately accepted Estepp's guilty plea and approved the felony diversion agreement, pursuant to which Estepp received a supervision term of five years, conditioned upon his agreement to pay restitution in the amount of $26,409.61, with the first payment of at least $440 due within 30 days. Trial Record ("TR"), pp. 42-44. The Trial Court also conditioned its approval of pretrial diversion on Estepp's being evaluated for substance abuse and following up on all recommended treatment; submitting his residence to the Division of Probation and Parole ("P&P"); not changing his residence without the approval of his P&P officer; and following the provisions of the pretrial diversion agreement and all other standard conditions of supervision. TR, pp. 39-41.

Later that same year, in November of 2023 and again in December of 2023, Estepp filed a request with the Interstate Compact Offender Tracking System ("ICOTS") for a transfer of supervision to Ohio. Kentucky P&P submitted both of

Estepp's ICOTS requests to the Ohio Adult Parole Authority ("Ohio APA"), which denied each request. TR, p. 55.

Not long afterward, on January 30, 2024, Officer Konner Frost ("Frost") with P&P filed a Violation of Supervision Report ("VSR") and affidavit alleging that Estepp had violated the conditions of the felony diversion program by failing to make his regularly scheduled restitution payments. TR, pp. 45-47. Frost alleged that between March of 2023 and January of 2024, Estepp had paid only $1,100 toward his restitution, leaving a deficit of $4,400 that he should have paid over ten months. *Id.* On February 27, 2024, the Trial Court conducted the first felony diversion termination hearing in this case. Estepp stipulated to the violation and advised the Trial Court that he anticipated both a salary increase and rent savings by getting a roommate. VR, 2023-02-27, at 2:04-3:24. Based on the foregoing, the Trial Court found "that although [Estepp] violated his felony diversion . . . he [was] still manageable in the community provided he begins making regular monthly payments toward the restitution owed." TR, p. 53. The Trial Court set Estepp's monthly restitution payments at the same sum of $440 to begin March 13, 2024, and to be paid on the 13th of the month thereafter until paid in full. *Id.*

Not quite eight months after the first VSR, on August 5, 2024, Frost filed a second VSR, accompanied by an affidavit, alleging that Estepp had again

violated the conditions of the felony diversion program. TR, pp. 54-56. Frost alleged that Estepp had: (1) failed to report to P&P as directed; (2) provided a false home address to P&P, indicating that he resided in Highland Heights, Kentucky, when he actually was residing in Cincinnati, Ohio; (3) failed to report to P&P his change of address to Cincinnati, Ohio, having left the area of his supervision without authorization and against the express denials of an ICOTS transfer; and (4) failed to progress with his regular monthly restitution payments. *Id.* The Trial Court conducted a hearing on August 27, 2024, at which Estepp stipulated to the violations. VR, 2024-08-27, 0:28-0:35.

At the hearing, Estepp called his brother to testify as a character witness. VR, 1:10. His brother testified that Estepp served in the U.S. Army, formerly in active, deployed duty, and then as a firearms trainer with the U.S. Army National Guard. VR 1:40-2:32. He also testified that Estepp was employed as a body piercer with "Ballistic" tattoo shop. VR, 2:33-2:40. In response to questioning by Estepp's counsel, the brother testified that Estepp was allowed to carry a firearm and that he had called Estepp while he was on the firing range training soldiers. VR, 2:40-3:00. However, Estepp contradicted this information under oath, testifying that his employment as a marksmanship instructor was procedural in nature, educating his fellow soldiers in the steps necessary for their

firearms qualification, and that he did not possess, use, or have access to firearms or ammunition.  VR, 9:19-53.

Estepp argued that he should be sanctioned but allowed to remain on diversion.  VR, 3:20-30.  Via counsel, Estepp conceded that missing his home visits from P&P while "going to see his girlfriend" was "stupid," but insisted that he was not a danger to the community. VR, 3:30-45.  Counsel also described Estepp's incarceration for 30 days pending his hearing as a "sanction" and a "wake-up call."  VR, 3:45-4:00, 5:24-5:37.  Despite stipulating to the VSR, which stated that he had failed to make significant progress toward restitution, Estepp claimed that he had been making regular payments and, at that time, could reasonably afford the monthly restitution payments to which he had agreed.  He asked the Trial Court to consider his important and "selfless" job as a member of the military.  VR, 4:00-4:25.  Finally, he argued that, outside of the failure to be present for the home visit, he was meeting the requirements of P&P and was an asset to the community.  VR, 4:50-5:20.

The Commonwealth argued that Estepp knowingly left the area of his supervision, violated the terms of his felony diversion by not only visiting his girlfriend in Cincinnati but also living at his girlfriend's house after being twice denied an ICOTS transfer, and then provided a false address to P&P.  VR, 5:50-6:20.  Also, after the testimony of Estepp's brother, the Commonwealth expressed

concern that, incidental to his employment as a weapons trainer with the U.S. Army National Guard, Estepp had access to firearms, and this proximity was expressly prohibited by his felony diversion agreement. VR, 6:28-48.

The Trial Court considered whether Estepp posed a "danger to the community." VR, 2024-08-27, 15:25-58. Observing that, as a soldier and national guardsman, Estepp had been taught that rules are to be followed "to a tee," the Trial Court explained that felony diversion was Estepp's opportunity to demonstrate that he could follow the rules. VR, 14:24-45 and 15:45-58. Instead, Estepp had violated the rules by not paying restitution and lying about where he was living. The Trial Court then addressed Estepp's claimed justifications for continuing on diversion:

> When your attorney says that you're not a "danger to the community," . . . the problem [is] that [if] someone is not willing to tell the truth or follow the rules, what else have they been doing and just haven't been caught, yet. It is hard to know if you are a danger to the community.

VR, 17:40-18:10. The Trial Court concluded that felony diversion was no longer appropriate. *Id.*, 19:30-50. The Trial Court then moved to the issue of sentencing Estepp, who waived any need to obtain a new pre-sentencing investigation report. VR, 23:44-24:10. Thereafter, the Trial Court accepted the Commonwealth's recommendation and, in accordance with Estepp's guilty plea to TBUT under $10,000 (Controlled Substance), sentenced him to three years, probated for three

-7-

years upon the terms and conditions set by P&P. VR, 24:30-35. The Trial Court also recalculated Estepp's monthly restitution payments to $644.71 in order to pay off the remaining sum within his three-year probationary period. VR, 24:37. Estepp did not object to the recalculated payments. *Id.*

The Trial Court issued a written order on August 29, 2024, finding that Estepp had stipulated to failing to make regularly scheduled restitution payments, failing to report to P&P as directed, failing to provide his change of home address, and providing false information to P&P. TR, pp. 61-64. The Trial Court concluded that Estepp violated the terms and conditions of his felony diversion and, based on a preponderance of evidence, it "terminated" Estepp's felony diversion. *Id.* Unlike its prior Order continuing diversion, the Trial Court did not put in writing any findings or conclusions as to whether Estepp posed a significant danger to his prior victim, Walgreens, or to the community at large, or whether Estepp was manageable in the community. *Id.* The Trial Court formally sentenced Estepp to three years, probated for a period of three years upon terms and conditions set out by P&P. *Id.*, p. 63. The Trial Court's written order also required Estepp to make monthly restitution payments of $644.71 until the total sum of $26,620.19, to which he had agreed, had been paid in full. *Id.*

On appeal, Estepp argues that the Trial Court abused its discretion in voiding his diversion and probating him without making the proper statutory

-8-

prerequisite findings for revocation. He also argues that the Trial Court lacked the authority to raise his restitution payments and erred when it did so without making an inquiry into his financial circumstances. The Commonwealth asks us to affirm the Trial Court's Order, as the preponderance of the evidence supporting the violations, to which Estepp stipulated, validates that Estepp was a significant danger to the community and could not be managed on diversion. Further, the Commonwealth argues that the Trial Court did not err in recomputing Estepp's monthly restitution payments.

## II.    Standard of Review

We review the Trial Court's Order voiding Estepp's pretrial diversion agreement for abuse of discretion. *Commonwealth v. Andrews*, 448 S.W.3d 773, 780 (Ky. 2014) (citing *Commonwealth v. Lopez*, 292 S.W.3d 878 (Ky. 2009)); *see also Compise v. Commonwealth*, 597 S.W.3d 175, 180 (Ky. App. 2020). An abuse of discretion occurs where "the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). As we discuss *infra*, we must review whether the Trial Court's exercise of its discretion is consistent with the statutory criteria required for the revocation of probation, which are the same prerequisites for a decision to void a defendant's felony diversion. *Helms v. Commonwealth*, 475 S.W.3d. 637, 644 (Ky. App. 2015) (citing *Andrews*, 448 S.W.3d at 780)

("Although a trial court's discretion to manage probation is not 'upended,' that discretion must be 'exercised consistent with statutory criteria.'").

### III.  Analysis

In *Helms v. Commonwealth*, we explained that "[p]retrial felony diversion is a unique opportunity for a qualified defendant to enter a guilty plea or an *Alford*[2] plea to a qualified felony charge, yet, upon successful completion of the pretrial diversion period, not 'be branded with a felony conviction[.]'"  475 S.W.3d at 641 (quoting *Tucker v. Commonwealth*, 295 S.W.3d 455, 457 (Ky. App. 2009)).  Pursuant to KRS 533.258(1), "[i]f the defendant successfully completes the provisions of the pretrial diversion agreement, the charges against the defendant shall be listed as 'dismissed-diverted' and shall not constitute a criminal conviction." *Id.*  Conversely, if a defendant fails to follow the provisions of the agreement or complete the provisions within the time specified, a Trial Court may void the diversion part of the agreement, and the Commonwealth "shall decide whether or not to proceed on the plea of guilty in accordance with the law."  KRS 533.256(4).

The Kentucky General Assembly and this Court have made it clear that the decision "[w]hether to void a pretrial diversion agreement for a violation of its terms is to be determined by 'the same criteria as for the revocation of

---

[2] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

-10-

probation, and the defendant shall have the same rights as he or she would if probation revocation was sought.'" *Helms*, 475 S.W.3d at 641 (quoting KRS 533.256(2)). "Therefore, while distinguishable in significant ways from probation, the statutes and regulations applicable to revocation of probation and for voiding a pretrial diversion agreement are the same." *Id.* "[T]he statutory law regarding probation and other forms of supervised release provided" under KRS 439.310 *et seq.* applies to felony diversion. *Id.* at 641-42. Thus, while a Trial Court retains the discretion to determine whether to void a defendant's felony diversion, it is necessarily constrained by statute.

Specifically, KRS 439.3106(1)(a) sets forth the criteria that a Trial Court must consider when evaluating whether to revoke an individual's supervised release. We have explained those criteria thusly, "to wit, (1) the supervised individual's incompliant behavior demonstrates that the individual is a significant risk to prior victims or the community, and (2) the individual cannot be managed within the community." *Nantz v. Commonwealth*, 728 S.W.3d 804, 811 (Ky. App. 2026). A Trial Court must make both findings before pretrial diversion may be voided. *Compise*, 597 S.W.3d at 180 (citing *Burnett v. Commonwealth*, 538 S.W.3d 322, 324-25 (Ky. App. 2017)). "These findings can be either oral or written to satisfy both KRS 439.3106(1) and the defendant's due process rights." *Commonwealth v. Gilmore*, 587 S.W.3d 627, 630 (Ky. 2019).

Here, there is no doubt that Estepp violated the conditions of his pretrial diversion agreement in numerous, significant, and troubling ways. He did not meet his obligation to pay restitution, even after the Trial Court gave him a second chance and despite his prior acknowledgements of his ability and duty to pay. Even more concerning, Estepp knowingly and surreptitiously left the area of his supervision. He did not merely visit another jurisdiction; he commenced living at another residence in another state. All of this misconduct is even more alarming, given that he had twice been denied an ICOTS transfer. Thus, he knew by multiple notices from different entities that he was to remain in Kentucky and be supervised here. He decided to forgo these mandates. He stipulated to the violations reported by P&P and, even on appeal, does not contest the evidence on which the Trial Court relied in making the decision to terminate his pretrial diversion. And this evidence of serial, serious noncompliance can be sufficient to demonstrate that he is a significant risk to, and unmanageable within, the community. Had the Trial Court used the requisite language, we might well be affirming the decision here.

However, the Trial Court failed to make such findings. At his first termination hearing ten months after entering felony diversion, the Trial Court issued findings that, despite his failure to make progress toward paying his restitution, he was "not a threat" and "still manageable in the community." VR,

-12-

2024-02-27, 17:10; TR, p. 53. However, at the hearing in August 2024, the Trial Court did not communicate the necessary statutory findings as we have directed in previous cases. Indeed, the Trial Court expressly stated that it was not sure that Estepp posed a danger. But then it proceeded to describe Estepp's misbehavior, which could clearly constitute a danger.

In *Compise*, we reviewed a case with factual and procedural histories very similar to the one *sub judice*. 597 S.W.3d at 175-79. Compise received felony diversion after entering an *Alford* plea to receiving stolen property. *Id.* After failing to pay restitution and committing other violations, the Circuit Court voided the diversion from her felony agreement. *Id.* at 179. We held that the Court erred by failing to make explicit findings that Compise was a significant risk or danger and could not be managed in the community. *Id.* at 182-83. While the lower Court there may have intended to reach those conclusions, it never articulated them and, thus, we had no choice but to vacate and remand. *Id.* Similarly, we have held that a Circuit Court erred by neglecting to make a finding on one but not the other statutory prerequisite. *Burnett*, 538 S.W.3d at 324-25 (court erred by not making finding that defendant was a significant risk to the community before voiding pretrial diversion).

The Trial Court's comments at the hearing on August 27, 2024, indicated uncertainty about whether Estepp's failure to follow the rules and his

dishonesty concerning his residence made him a danger to the community. As in *Compise*, while the Trial Court may have intended to make a finding that Estepp's conduct made him a significant risk to the community – and that appears to be the case here – it never sufficiently articulated such a finding, and it never memorialized it in its written Order. Similarly, the Trial Court communicated that felony diversion was not appropriate but did not find that Estepp was not manageable within the community.

To be sure, there was ample evidence before the Trial Court to support conclusions that the conditions of felony diversion alone were not enough to supervise Estepp within the community, and that a sentence of incarceration was necessary to make him comply with those conditions. We neither overlook nor condone Estepp's cavalier attitude towards complying with conditions with which he does not agree. The requirement of living in the Commonwealth and submitting to supervision here is the most basic component of diversion. Following orders is another. Estepp did neither; despite being told and warned repeatedly to remain in the jurisdiction, he simply and steadfastly refused.

But the Trial Court articulated no such contemporaneous finding and, once again, did not memorialize in its final written Order any finding that Estepp was unmanageable within the community under felony diversion – even though it could have based upon the evidence before it. The crime itself here – stealing 120

-14-

doses of narcotics from a pharmacy – posed a danger to the community at large. In hindsight, diversion was questionable at the outset. And the Trial Court initially expressed reticence. Estepp showed his unmanageability early and often due to his obstinate refusal to submit to supervision in Kentucky. We acknowledge that it is somewhat obvious that Estepp posed a danger and was unmanageable on his own. The Trial Court could have even decided to send Estepp to prison instead of giving him another chance at supervision while on probation versus diversion.

However, to do so, the Trial Court was required to making the corresponding findings. And we are bound by legal precedent, just as the Trial Court is. Every case interpreting the statute has said Trial Courts must use the required terminology. Simply put, the Trial Court must have explicitly said that Estepp posed a significant risk or danger to the community and that he was unmanageable in the community. Here, the Trial Court did not use the mandated terminology. While not magic words, all case law holds that the language is requisite. Here, no matter how justified the Trial Court's conclusion could have been, it was not explained. In the face of such silence at the trial level, the Appellate Courts cannot supply rationales, no matter how evident such reasoning appears, as we operate with the benefit of hindsight, and the Trial Court does not.

In *Compise* and *Burnett*, we clearly established that a Trial Court must explicitly and unequivocally communicate the prerequisites set forth in KRS

439.3106(1)(a) prior to voiding a criminal defendant's felony diversion. In this instance, the Trial Court abused its discretion when it failed to do so. Therefore, we vacate and remand for the Trial Court to consider whether Estepp's failure to abide by the conditions of his pretrial diversion agreement constituted a significant risk to his prior victim or the community at large and whether he could be managed in the community, before deciding anew whether his felony diversion should be voided. The Trial Court is free to stand by its prior conclusions; we are not compelling the result here. However, the Trial Court, and not this Court, must state with specificity the statutory factors for removal from diversion and sentencing. The Trial Court retains the discretion to determine whether it desires another hearing. We are not ordering another hearing. The Trial Court may decide the matter solely on the evidence that it has already heard as of the close of the hearing at issue. However, if it does conduct another hearing, an inquiry into the exact nature of Estepp's employment as a firearms instructor would be warranted. Even defendants on diversion who have pleaded guilty to a felony are prohibited from possessing a firearm directly or indirectly. Clearly, Estepp is not allowed to be on, or proximate to, a shooting range, weaponry, or ammunition.

Having vacated the Trial Court's Order, there is no need to consider Estepp's unpreserved claim – to which he did not object before the Trial Court or request a hearing – regarding the amount of his monthly restitution payments. On

remand, the Trial Court may again consider the manner by which to address Estepp's failure to make progress on his agreement to pay restitution, including making any inquiries regarding his financial status, and Estepp is free to make and preserve any objection.

## IV. Conclusion

For the foregoing reasons, the Campbell Circuit Court's Order is vacated and remanded for further proceedings. While not required to conduct another hearing, or even to change its conclusion, the Trial Court is compelled to make the requisite findings to support its decision.

ALL CONCUR.


BRIEFS FOR APPELLANT:

Sarah Dickerson Dailey
Substitution by:
Erin Hoffman Yang
Department of Public Advocacy
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Ken W. Riggs
Assistant Attorney General
Frankfort, Kentucky